**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| STATE OF NEVADA,<br><br>  Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, et al.,<br><br>  Defendants. | Case No. 2:16-cv-00665-APG-GWF<br><br>**ORDER GRANTING STATE OF NEVADA'S SUMMARY JUDGMENT MOTIONS REGARDING LOST RENTS AND HOLDING COSTS**<br><br>(ECF Nos. 69, 107) |

The State of Nevada exercised its eminent domain powers and condemned property needed for a public roadway project called Project Neon. Among the condemned property was a portion of a vacant lot at 1404 S. Martin Luther King Boulevard in Las Vegas. Defendants Darrell E. Jackson; Thomas M. Strawn, Jr.; and Andrew S. Levy (the "Landowners") own the property. ECF No. 23 at 8.

The State filed an eminent domain action to assess the just compensation due for the property. The Landowners counterclaimed for pre-condemnation damages based on several categories of damages. *Id.* at 5-14. At issue in these motions are the Landowners' requests for (1) lost rent for an office building they allegedly had planned to build and (2) holding costs of interest, late charges, and unpaid charges associated with the loan the Landowners took out to purchase the property.

The State moves for summary judgment on these claims, arguing that due to the Great Recession and an inability to obtain interested tenants, the Landowners had already abandoned their plan to develop an office building before the State announced its Project Neon plans. The State contends the Landowners cannot show the State's announcement of its intent to condemn a portion of the property caused any loss of rents and that any such losses are speculative because no building was ever constructed and no tenants were obtained. The State also argues the holding costs are speculative because there is no evidence the Landowners would have obtained a

construction loan, would have completed constructing the office building by any particular date, would have had tenants, and would have used those funds to pay off the loan.

The Landowners respond that genuine disputes remain about whether they ceased development on the property due to the uncertainty following the announcement of Project Neon. They also argue that had the State not announced Project Neon, they would have been able to convert the purchase money loan into a construction loan. They contend their damages are not speculative because they have provided a breakdown of interest payments, late charges, and unpaid charges that accrued during the time the property was unable to be developed due to the State's announcement.

The parties are familiar with the facts, so I will not repeat them in full here. In short, the Landowners purchased the property in 2007 and were able to change the zoning from residential to office. Shortly after obtaining the zoning change, the Landowners began to receive information about Project Neon suggesting that some or all of the property would be condemned. The Landowners assert that in light of that possibility, and because the exact amount of the property to be condemned was uncertain, they did not pursue their plan to construct an office building on the property. They seek damages resulting from the property essentially being "frozen" after the State announced its intention to condemn.

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.

2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

Nevada recognizes a claim for pre-condemnation damages. *State ex rel. Dep't of Transp. v. Barsy*, 941 P.2d 971, 976 (Nev. 1997), *overruled on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11 (Nev. 2001) *and modified in part by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008) (en banc). But "not every decrease in market value as a result of precondemnation activity is compensable." *Sproul Homes of Nev. v. State ex rel. Dep't of Highways*, 611 P.2d 620, 622 (Nev. 1980). To make out a pre-condemnation damages claim, the landowner must show: (1) "an official action by the [would be] condemnor amounting to an announcement of intent to condemn;" (2) the condemnor "acted improperly following the agency's announcement of its intent to condemn," such as by "unreasonably delaying an eminent domain action after announcing its intent to condemn the landowner's property;" (3) resulting in damages. *Buzz Stew*, 181 P.3d at 672-73; *Barsy*, 941 P.2d at 976-77.

The Landowners bear the burden of providing an evidentiary basis to support the amount of damages they seek. *Frantz v. Johnson*, 999 P.2d 351, 360 (Nev. 2000). "Although the amount of damages need not be proven with mathematical certainty, testimony on the amount may not be speculative." *Clark Cty. Sch. Dist. v. Richardson Const., Inc.*, 168 P.3d 87, 97 (Nev. 2007).

The Landowners do not present non-speculative evidence sufficient to withstand summary judgment as to lost rents or holding costs. As to rents, the Landowners never applied for a construction loan and no building was ever constructed or leased out. ECF No. 69-3 at 9, 11. There is no evidence of a tenant willing to rent office space in the planned building if it was constructed, what date such rents might begin, or at what rate. The one potential tenant the Landowners identified backed out of the proposed deal (ECF No. 69-7 at 6-7), but there is no evidence it did so due to Project Neon. One of the Landowners admitted it would have been difficult to obtain a tenant given the economic conditions in Las Vegas. ECF No. 78 at 4. Consequently, it would be speculative as to whether a building would have been constructed, when it would have been completed, whether the Landowners would have obtained any tenants

1 (let alone how many), when such tenancies would begin, what portion of the building the tenants would rent, and how much the tenants would pay to rent the space.

Similarly, the Landowners' request for holding costs is speculative because they assume, without any evidentiary support, that they would have been able to obtain a construction loan. However, they present no evidence that any particular lender would have extended a construction loan or what the terms of that loan would have been. Additionally, the Landowners request the entire carrying costs related to the purchase money loan, but they disregard the fact that a construction loan would have also carried interest that they would have had to pay, and presumably that interest would have attached to a higher loan balance to cover both the prior purchase loan plus construction costs. *See Sunridge Builders, Inc. v. Old Blue, LLC*, No. 56335, 2013 WL 485831, at *2 (Nev. Feb. 6, 2013) (stating the "damages for loss of a loan are usually limited to the difference between the interest rate contracted for and the rate the injured party is able to secure"). Because there is no evidence that the Landowners would have been able to obtain a construction loan (especially during the recession), the amount of that loan, or the interest rate that would have applied, damages for holding costs are speculative and cannot be said to have been caused by the Project Neon announcement.

The cases the Landowners cite do not support their position. In each of those cases, the party seeking damages was able to present evidence of actual tenants lost or actual purchase offers that fell through due to the announcement of the potential condemnation. *See City of N. Las Vegas v. 5th & Centennial, LLC*, No. 58530, 2014 WL 1226443, at *1 (Nev. Mar. 21, 2014), *clarified on denial of reargument sub nom. City of N. Las Vegas v. 5th & Centennial*, 331 P.3d 896 (Nev. 2014) (evidence of purchase offer withdrawn after offeror learned that condemnation project would place too many limitations on the property); *Barsy*, 941 P.2d at 973-74, 977 (evidence that existing tenants did not renew and no new tenants were interested). This case is different.

/ / / /

/ / / /

IT IS THEREFORE ORDERED that plaintiff State of Nevada's motions for summary judgment regarding lost rents **(ECF No. 69)** and holding costs **(ECF No. 107) are GRANTED**.

DATED this 15th day of September, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE